J-A28039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TRICIA MEZZACAPPA | |
| Appellant | No. 627 EDA 2014 |

Appeal from the Judgment of Sentence January 27, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-SA-0000154-2013

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 06, 2014**

Tricia Mezzacappa appeals *pro se* from her judgment of sentence following a verdict of guilt for the summary offense of harassment[1].  Upon careful review, we affirm.

The charges stem from a series of actions by Mezzacappa, a local resident, against the Borough of West Easton's staff and officials. On April 11, 2013, Mezzacappa appeared at the Borough Hall for purposes of retrieving borough records under the Right-to-Know Law[2].  Jill Garcia, a borough clerk, denied Mezzacappa initial entry and contacted the Easton

---

[1] 18 Pa.C.S. § 2709(a)(3).
[2] 65 P.S. § 67.101, *et seq*.

Police Department to escort her on the premises.[3] After Mezzacappa gained entry through a police escort, tensions between Mezzacappa and Garcia rose following Mezzacappa's request for a copy of the borough ordinance or mandate that requires the police to escort her every time she enters the borough hall. N.T. 1/27/2014, pp. 19-30. Garcia informed Mezzacappa that the escort was necessary because she feared Mezzacappa, and the correct paperwork needed to be filed in order to properly process her request. N.T. 1/27/2014, pp. 14-16. Mezzacappa stated that, given the size differential between herself and Garcia, she equally feared Garcia. N.T. 1/27/2014, p. 41. She again demanded the borough records regarding the prerequisites for her entry into the Borough Hall. N.T. 1/27/2014, pp. 37-48. Garcia responded with insulting, obscene statements to Mezzacappa, and Mezzacappa retorted with numerous derogatory remarks about Garcia's weight. N.T. 1/27/2014, pp. 19-30, 37-48.

On April 26, 2013, Garcia filed a private criminal complaint against Mezzacappa alleging, among other things, harassment. The Commonwealth charged Mezzacappa with violating 18 Pa.C.S. § 2709(a)(2), (3), (4), and (7). On June 27, 2013, the magistrate court found Mezzacappa guilty under

---

[3] Garcia testified that when Mezzacappa approaches the Borough Hall, she always refuses Mezzacappa entry and contacts the police to escort Mezzacappa into the building. N.T. 1/27/2014, pp. 27-30. The constitutionality of Garcia's conduct in repeatedly denying Mezzacappa unescorted entry into a public building is not at issue in the present matter.

18 Pa.C.S. § 2709(a)(3).[4]  Mezzacappa filed a timely appeal.  During a bench trial on January 27, 2014, the court heard testimony from Garcia, Mezzacappa, and responding Officer Carl Faulkner of the City of West Easton's Bureau of Police. Consistent with her averments in the criminal complaint, Garcia testified that she feared Mezzacappa based on her previous interactions with her at the Borough Hall.  N.T. 1/27/2014, pp. 23-30. Garcia added that her fear also arose from Mezzacappa maintaining a website that portrays Garcia in an offensive and demeaning light and contains photographic montages implying Mezzacappa will use a firearm against the borough, its officials, and employees. *Id.*  The trial court found Mezzacappa guilty of harassment under subsection (a)(3).

Mezzacappa seeks to present the following issues for review:

_____

[4] Following Mezzacappa's conviction in magistrate court, the criminal docket incorrectly stated that she was convicted of 18 Pa.C.S. § 2709(a)(2), following a person in or about a public place, instead of 18 Pa.C.S. § 2709(a)(3), a course of conduct which serves no legitimate purpose. Commonwealth's Brief at 3, n. 2.  After being informed of the error at the beginning of trial, both Mezzacappa and her counsel expressly agreed to proceed immediately to trial on subsection (a)(3).  Mezzacappa did not object to amending the charge from subsection (a)(2) to (a)(3).  Nor did she request a continuance or challenge this amendment in a post-sentence motion. *See* N.T. 1/27/2014 at 11.  Therefore, the procedural due process arguments in her brief have been waived, since Mezzacappa failed to raise them in the trial court. *DeMatteis v. DeMatteis*, 582 A.2d 666, 673 (Pa.Super.1990) ("Even constitutional issues such as failure to afford due process may be waived, where issues are not raised in lower court, but are presented for the first time on appeal").  Even if she preserved these issues, they are devoid of merit for the reasons provided below.

[1.] Whether the [c]ourt of [c]ommon [p]leas committed error of law or abused its discretion, violated Mezzacappa's constitutional right to equal protection/due process/First Amendment when it determined that Defendant Mezzacappa was guilty of Harassment under 18:2709(a)(3)? (see docket entry, guilt determined to be 18:2709 (a)(2), and transcript page 50 line 1 through page 53 line 8)

[2.] Whether the [c]ourt of [c]ommon [p]leas committed error of law, abused its discretion, or violated Ms. Mezzacappa's Constitutional right to Due Process when it allowed a continuance of proceeding at the time of nonjury trial, with lawyers present after commencement of proceedings, to change guilty verdict from 18:2709 (a)(2), to 18:2709 (a)(3), even when the docket entries clearly show that President Judge Steven Baratta already corrected the discrepancy, ordering on 11/6/2013, that Mezzacappa was found guilty of 18:2709 (a)(2)? (see transcript page 3 line 24 through page 10 line 25)

[3.] Whether the [c]ourt of [c]ommon [p]leas committed error of law, abused its discretion, or violated Ms. Mezzacappa's Constitutional right to Due Process when Mezzacappa was clearly prejudiced by this last minute continuance at the time of nonjury trial. This last minute continuance thereby violated Mezzacappa's right to be defended by counsel. Mezzacappa was unable to afford a second appearance from her Philadelphia lawyer who was retained in her defense, for a single appearance at the time of nonjury trial. (see transcript page 3 line 24 through page 10 line 25)

[4.] Whether the [c]ourt of [c]ommon [p]leas committed error of law, abused its discretion, violated Mezzacappa's constitutional right to equal protection/ due process/ First

- 4 -

Amendment, when it determined that Defendant Mezzacappa was guilty of Harassment under 18:2709 (a)(3)....'course of conduct with no official purpose after Mezzacappa entered into evidence a letter from Philip Lauer, Esq., directing Mezzacappa to obtain a policy/resolution/ordinance that has banned Mezzacappa from entering Borough Hall? Letter from Lauer was dated April 9, 2013. Date of incident prompting this prosecution was April 11, 2013. (see transcript page 47 line 9 through page 48 line 8, and page 39 line 22 through page 40 line 1)

[5.] Whether the [c]ourt of [c]ommon [p]leas committed error of law or abused its discretion when it determined that witness for the Commonwealth, West Easton Borough Clerk Jill Garcia, was a credible witness, after Jill Garcia conceded on record that she was the first person to insult Mezzacappa in the presence of Officer Faulkner on April 11,2013, by stating "I don't have to let you in here because I fear you" and further testified that she called Mezzacappa "a fucking bitch" on April 11, 2013? (see transcript page 19 line 7 - 24 and page 31 line 4 through page 32 line 21)

Appellant's Brief at 4-5.

In lieu of filing a 1925(a) opinion, the trial court stated the reasons for

its verdict at the conclusion of trial:

[B]ased upon the information that was presented today, Ms. Mezzacappa['s testimony], the postings on [Mezzacappa's] blog, as the witness [Garcia] for the Commonwealth testified, and the prior involvement, that I think that the totality of the evidence supports a finding beyond a reasonable doubt that Ms. Mezzacappa did engage in a course of conduct with intent to harass, annoy, and alarm this borough employee as well as other people involved with West Easton and is guilty of the summary

offense of harassment pursuant to Title 18 Pa.C.S.A. Section 2709(a)(3).

And based upon the statute, I'm going to impose a fine of $300 plus costs.

N.T., 1/27/14, p. 55 (quoting trial court).

Mezzacappa's first three issues appear to raise a procedural due process challenge to her harassment conviction. She asserts the trial court violated her constitutional right to due process when it permitted the Commonwealth to change the subsection under which she was charged and previously convicted in magistrate court from subsection 2709(a)(2) to subsection 2709(a)(3) of the harassment statute.

In reviewing a constitutional question, the appellate court's standard of review is de novo, and its scope of review plenary. ***City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)***, 985 A.2d 1259, 1269 n. 13 (Pa.2009).

Mezzacappa's procedural due process argument lacks merit. While "[t]he Commonwealth [may have] acted inappropriately, [and/or] in bad faith, by waiting until the last minute on 1/27/14, at time of trial, to attempt to change . . ." the subsection under which she was charged, the trial court was ready and willing to grant her a continuance in order to more fully present a defense. Appellant's Brief at 11. She asserts, "[t]his act caused prejudice to Defendant, because she could not afford to have her Philadelphia lawyer return for another court date. Mezzacappa reluctantly

allowed the Commonwealth to change the charges, otherwise she would have had no attorney present for the matter that was being continued." *Id*.

After notice of the charges, and having been afforded an opportunity to delay the trial, Mezzacappa willingly and voluntarily proceeded to defend the charge of harassment under subsection (a)(3). Because the trial court did not deprive Mezzacappa of notice and fair opportunity to be heard on the merits of her defense, no procedural due process violation occurred. Although she may not have been able to afford the particular attorney she hired, Mezzacappa could have hired a different attorney or sought appointment of counsel from the court for the second court date. Accordingly, since the trial court did not violate Mezzacappa's federal or state due process guarantees, this claim lacks merit.

While couched in procedural due process language, Mezzacappa's fourth issue on appeal appears to challenge the sufficiency of the evidence to convict her of harassment. She claims that she "only responded to [the] West Easton Borough Clerk, without any vulgarity, after Jill Garcia refused to allow Mezzacappa inside Borough Hall." Appellant's Brief at 10. This claim also lacks merit.

Our standard of review for a challenge to the sufficiency of the evidence is:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find

every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted); *see also Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa.Super.2008) (quoting *Commonwealth v. Smith*, 956 A.2d 1029, 1035-36 (Pa.Super.2008)).

Section 2709(a)(3) of the Criminal Code defines the crime of harassment in relevant part as follows: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S. § 2709(a)(3).

In general, a single act will not constitute a course of conduct under the definition of harassment. *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super.2002). In prosecutions for harassment, the introduction of evidence of prior acts of harassment can be relevant and admissible inasmuch as the evidence tends to prove that the alleged offense constitutes part of an overall scheme of harassment of the prosecutrix and the evidence

is germane to establish an element of the offense, i.e., criminal intent. ***Commonwealth v. Evans***, 445 A.2d 1255 (Pa.Super.1982).

To be convicted under this particular subsection of harassment, the Commonwealth must prove beyond a reasonable doubt that Mezzacappa intended to annoy, harass, or alarm Garcia (the clerk) through engaging in a course of conduct or repeatedly committing acts which serve no legitimate purpose. ***See*** 18 Pa.C.S. § 2709(a)(3). Mezzacappa directs our attention to the day where the acrimony between she and Garcia rose to a verbal confrontation. ***See*** Appellant's Brief at 10. However, our focus extends beyond the day in question to the series of events beginning in approximately September 2010, when Garcia alleged Mezzacappa began harassing her. ***See*** Private Criminal Complaint, 4/26/2013, at 3 (page number supplied). Notably, the trial court found credible Garcia's testimony regarding Mezzacappa's prior bad acts involving Garcia and other borough officials.[5] Mezzacappa's disconcerting and offensive blog posts, in addition to her verbal insults to Garcia, suffice to establish that she engaged in a course

---

[5] Garcia testified, "[Mezzacappa] runs a blog called West Easton Footprint where she's posted videos of guns and caskets next to the borough hall, and she's made open threats against council people . . . . [Mezzacappa refers to me as] super tub. I'm giant Jill Garcia." Consistent with Mezzacappa's pattern of calling the clerk derogatory names, Garcia further testified that, on the date at issue, Mezzacappa stated Garcia outweighed her by 400 pounds, that she was concerned what Mezzacappa would write next on her blog, and whether her kids would find these hurtful comments when searching the internet for her name. N.T. 1/27/14 at 16-19.

of conduct that served no legitimate purpose and annoyed and/or alarmed Garcia. The Commonwealth's evidence enabled the fact-finder to circumstantially find that Mezzacappa intended such a result. Accordingly, sufficient evidence existed to convict Mezzacappa of harassment.

In her last issue on appeal, Mezzacappa asserts the verdict was against the weight of the evidence. Specifically, she claims the trial court erred by finding Garcia, the borough clerk who filed the criminal complaint of harassment and who testified at trial, a credible witness. This claim lacks merit.

Our review of whether a verdict is against the weight of the evidence is governed by **Commonwealth v. Champney**, 832 A.2d 403 (Pa.2003):

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Id.* at 408.

When a challenge to the weight of the evidence is predicated on the credibility of trial testimony, appellate review of the trial court's decision is extremely limited. **Commonwealth v. Gibbs**, 981 A.2d 274, 282

(Pa.Super.2009), *appeal denied*, 3 A.3d 670 (Pa.2010). Generally, unless the evidence is so unreliable or contradictory as to make any verdict based thereon pure conjecture, appellate courts will reject these types of claims. *See, e.g., Commonwealth v. Trippett*, 932 A.2d 188, 198 (Pa.Super.2007); *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super.2004).

Mezzacappa essentially asks this Court to reassess the credibility of Garcia's testimony and her own testimony. It is well settled, however, that this Court cannot substitute its judgment for that of the trier of fact. *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa.Super.2000). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa.Super.2008). The trial court heard conflicting testimony from Mezzacappa and Garcia. Therefore, since the trial court was free to believe some, all, or none of the testimony presented, it acted within its discretion in crediting Garcia's testimony over that of Mezzacappa's testimony. Mezzacappa's dissatisfaction with the trial court's credibility determination simply does not afford her a basis for relief. Accordingly, we discern no error.

Judgment of sentence affirmed.

President Judge Gantman joins in Memorandum.

Judge Wecht concurs in the result.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014