491 A.2d 281

**Robert W. WOLFE, Appellee,**

v.

**Lois J. WOLFE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1984.

Filed April 12, 1985.

314

Gretchen S. Reed, Beaver, for appellant.

Robert W. Lewis, Jr., Ambridge, for appellee.

Before CIRILLO, TAMILIA and MONTGOMERY, JJ.

PER CURIAM:

This is an appeal from a declaratory judgment that an agreement entered into by the parties on August 27, 1979, is a valid post-nuptial agreement and bars appellant's claim for equitable distribution of marital property in the instant divorce action. We agree with the court below and therefore affirm.

Robert and Lois Wolfe were married on March 15, 1954. They have three children, all of whom are now adults. In 1968, Robert quit his employment with Halstead Engineers to start his own business, Pittsburgh Tubular Shaft Company, Inc. For most of the marriage, Lois remained at home raising the children. In 1974 or 1975, Lois sought and obtained employment as a secretary. In 1979, marital problems arose which ultimately resulted in Lois leaving the marital home in August of that year. The parties discussed, and ultimately reduced to writing, an agreement under which Robert would pay Lois $25,000 and Lois would execute a deed vesting title to the marital residence in Robert. Robert would also assume custody and sole economic responsibility for the children. Lois would also receive certain personal property.

Robert obtained counsel to draft the agreement. Discussions were held and revisions made before the agreement was reduced to final form by Robert's counsel. Attached to the agreement was a net worth statement prepared by Robert listing his assets. Robert gave a copy of the final agreement to Lois and advised her to review it with her own attorney. A few days later, Robert's attorney also advised Lois to seek counsel to review the agreement before she signed. Lois declined their advice and signed the agreement on August 29, 1979. Shortly, thereafter, Lois left the marital home.

After the separation, the parties saw each other on a social basis until February 1981, going out to dinner and to plays and occasionally engaging in sexual intercourse. The relationship ended when Robert began to see another woman. On March 18, 1982, Robert filed for divorce. Lois filed an answer and counterclaim alleging that the agreement was invalid and requesting equitable distribution, alimony, counsel fees and costs. The parties requested a declaratory judgment pursuant to Pa.R.Civ.P. 1602. The Honorable Joseph S. Walko concluded that the agreement was valid and precluded the claim for equitable distribution.[1] This appeal followed.

■ Appellant's arguments on appeal are intertwined. First, she claims that the agreement is not a "complete" property settlement agreement because she received only one-half of the parties jointly-owned properties and none of the property owned solely by her husband. She also contends that, since the Divorce Code of 1980, 23 P.S. § 101 *et seq.*, defines marital property so as to include property held in the name of one spouse as long as such property was

---

1. Although the request for declaratory judgment also asked for a determination as to Lois's claims for alimony and counsel fees, Judge Walko did not discuss these claims in his opinion or in the accompanying order. We therefore confine our review to the issue of the agreement's effect on Lois's equitable distribution claim.

acquired during the marriage, she is entitled to equitable distribution of that property.[2]

■ The long-standing law of this commonwealth is that postnuptial agreements are presumed to be valid and binding on the parties. *McGannon v. McGannon*, 241 Pa.Super. 45, 359 A.2d 431 (1976). With respect to such agreements, the Divorce Code of 1980 states, "This act shall not affect any marital agreement executed prior to the effective date of this act...." 23 P.S. § 103. Under prior law, the party seeking to nullify such an agreement had the burden of proving, by clear and convincing evidence, either that a reasonable provision for the claiming spouse was not made at the time of the agreement, or, in the absence of such a provision, a full and fair disclosure of the other spouse's worth was not made. *Ratony Estate*, 443 Pa. 454, 277 A.2d 791 (1971).

■ Appellant herein does not argue that the 1979 agreement was unfair or did not make reasonable provision for her nor does she claim that appellee failed to fully disclose his assets. Rather, she based her claim on the premise that the agreement is not a complete one because she could not waive her right to equitable distribution (pursuant to the Divorce Code of 1980) since that right had not yet come into existence. We disagree. The New York divorce law contains a provision similar to 23 P.S. § 103, quoted above. In reviewing a similar case, the New York Supreme Court noted:

2. Appellant also claims that the parties continued their marital relationship after the signing of the agreement and that such activity abrogated the the agreement. This argument is inconsistent both with prior case law on settlement agreements and with recent cases determining the meaning of "living separate and apart", under 23 P.S. § 201(d). Judge Walko found the instant agreement to be a complete property settlement agreement rather than a mere separation agreement providing for support. In such circumstances, any subsequent reconciliation of the parties does not affect the validity of the agreement. *Commonwealth ex rel. DiValerio v. DiValerio*, 169 Pa.Super. 477, 82 A.2d 687 (1951). Further, under the facts of this case, the parties' activities, which consisted primarily of "dates" with occasional sexual intercourse while the parties continued to maintain separate residences, can hardly be called a reconciliation. See, *Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984).

Part of the *quid pro quo* which one gives up when one enters into a comprehensive agreement such as this is, [sic] the possibility that the law may change in one's favor. A stable and sure arrangement in the present is preferred to the mere "possibility" of a better result in the future.

*Boss v. Boss,* 107 Misc.2d 984, 436 N.Y.S.2d 167 (1981). Appellant's argument that the agreement must be nullified because she received only what she was entitled to under the prior law is not persuasive.[3] While it may be true that appellant could not have forced a more favorable property settlement in court, nothing in our law precluded the parties from being more generous to one another than the court would have been.

■ Appellant also contends that the language of the agreement itself does not support an interpretation of the agreement as a complete property settlement but only a partial settlement (which therefore would entitle appellant to equitable distribution of property not covered in the agreement). We believe there is ample support in the record for Judge Walko's finding that the agreement effectively disposed of all of the then-existing marital property and was indeed intended to dispose of all property. Included in the agreement is a paragraph in which each party releases the other from "all claims, demands, actions, causes of action or suits at law or in equity. . . ." While not controlling, we also note the recital to the effect that the parties have come to an agreement as to "all of their said matters of property." The exhibit attached to the agreement disclosed appellee's sole assets as well as the sole assets of appellant. We cannot conclude that the failure to transfer one party's sole assets to the other party indicates an intention that the agreement is less than complete.

Judgment affirmed.

---

**3.** In *McGannon v. McGannon,* supra, this court rejected the argument that the requirement of "reasonable provision" is not met if the party attacking the agreement received only what she was entitled to as a joint owner of tenancy-by-the-entireties property.