**Jenkins v. Jenkins**

C.P. of Monroe County, no. 1204 D.R. 2001, no. 8089 CIVIL 2001.

*Robin A. Spishock,* for plaintiff.
*C. Daniel Higgins Jr.,* for defendant.

WORTHINGTON, *J.,* October 25, 2004—Plaintiff, Chong Suk Cha Jenkins (Wife) and defendant, Allan Paul Jenkins (Husband) were married on May 27, 1981. On November 28, 1994, the parties entered into a "post-nuptial agreement." They did not physically separate until August of 2000. On November 9, 2001, Wife filed a complaint requesting a divorce pursuant to section 3301(c) of the Pennsylvania Divorce Code. On February 13, 2004, Wife filed a motion to convert the divorce action to a divorce pursuant to section 3301(d), a motion for entry of decree in divorce, a motion to enforce the postnuptial agreement, and a motion for award of counsel fees. On February 18, 2004, we issued a rule returnable on Husband and he filed an answer on March 9, 2004, alleging that the agreement should not be enforced because neither party had been abiding by its terms. Husband further maintained that Wife was precluded from seeking relief by the statute of limitations and the doctrine of laches. Arguments were held on August 10, 2004, and Wife's motions are now before us for disposition.

Neither party objects to the entry of a decree in divorce pursuant to section 3301(d) of the divorce code. Husband and Wife have met all of the requirements of section 3301(d) and have been separated in excess of the requisite statutory period. We will therefore convert the instant divorce action from section 3301(c) to section 3301(d) and enter a decree in divorce.

A consideration of whether the agreement at issue is actually a postnuptial agreement, or more precisely a midnuptial agreement, is not necessary for the purposes of resolving this dispute, as such a distinction turns on little more than semantics. The relevant discussion in this

case is whether the agreement at issue is a postnuptial agreement or a separation agreement. The answer depends upon the intent of the parties as gathered from all of the relevant facts.

A postnuptial agreement is typically a contract entered into after marriage by a husband and wife, generally involving the property or property rights of the parties. *Vaccarello v. Vaccarello,* 563 Pa. 93, 97, 757 A.2d 909, 911 (2000). A postnuptial agreement differs from other types of marital agreements in that it generally resolves property rights definitively. Where spouses desire to "settle and determine their respective property rights finally and for all time, [their agreement] should be construed as a postnuptial agreement." *Id.,* citing *Makowski v. Makowski,* 163 Pa. Super. 441, 443, 62 A.2d 71, 72 (1948). Moreover, liability under a postnuptial agreement is not automatically terminated by reconciliation of the parties or subsequent divorce. *Commonwealth ex rel. Egolf v. Egolf,* 49 D.&C.2d 400, 401 (1970); *Commonwealth ex rel. DiValerio v. DiValerio,* 169 Pa. Super. 477, 479-80, 82 A.2d 687, 688 (1951).

This is in sharp contrast to separation agreements. A separation agreement does not constitute, nor is it intended to constitute, "a full and final determination of the separate property rights of the parties." *Wareham by Trout v. Wareham,* 716 A.2d 674, 677 (Pa. Super. 1998). Rather, separation agreements "customarily [represent] a surrender of the wife's right to support in consideration of some property settlement." *Id.* Furthermore, a subsequent reconciliation of the parties will terminate the separation agreement. *Vaccarello* at 97, 757 A.2d at

911, citing *In re Ray's Estate,* 304 Pa. 421, 426, 156 A. 64, 65 (1931).

Here, it is our determination that Husband and Wife, in creating and signing the agreement, specifically intended for it to survive any potential subsequent reconciliation. The agreement provides:

"[N]either party presently contemplates any action to dissolve the marriage and each expresses the wish that the marriage continue until the death of one of them; but, each party recognizes the fragility of the situation and the economic and emotional realities of life . . . ." Postnuptial agreement at 1, 2.

Not only did the agreement specifically contemplate the potential for a subsequent reconciliation, it also contained a specific provision granting each party the right to pursue a divorce. Said provision imparts:

"This agreement shall not prevent or be construed to prevent either party from instituting proceedings or continuing proceedings already instituted to secure a divorce on just and proper grounds, nor shall it prevent the other party from making any defense thereto." Postnuptial agreement at 18, paragraph 17.

It is clear that the agreement, as written, contemplated a possible reunion of the parties. Additionally, the potential for a subsequent divorce was also expressly contemplated by both parties at the time they entered into the agreement. The Superior Court has held that when a postnuptial agreement is a complete property settlement agreement and maintains its independent contractual status, any subsequent reconciliation or remarriage of the parties does not abrogate the agreement. *Wareham by*

*Trout v. Wareham,* 716 A.2d 674, 677 (Pa. Super. 1998), citing *Commonwealth ex rel. DiValerio v. DiValerio,* 169 Pa. Super. 477, 479-80, 82 A.2d 687, 688 (1951). Because the agreement at issue anticipated divorce and was intended to survive a decree in divorce, the agreement maintains its independent contractual status despite the subsequent reconciliation of the parties. We therefore will not terminate the agreement on the ground that the parties resumed and maintained a relationship for approximately six years following the execution of the agreement.

Furthermore, we find that both Husband and Wife, via the terms of the agreement, expressed an unequivocal desire to settle and determine their respective property rights finally and for all time. The language of the agreement states, in pertinent part:

"[T]he parties intend by this agreement to fix and determine the equitable distribution rights of each of them in any and all property of every nature and description and wheresoever situated which the other presently owns or may hereafter acquire during his or her lifetime, and to mutually restrict the rights that each might otherwise have or hereafter acquire in the property, income or estate of the other by virtue of the marriage in order to preserve his or her own rights to freely dispose of his or her property or income during his or her lifetime, and the parties also desire by this agreement to fix and determine their rights and obligations with respect to alimony, alimony pendente lite, support and other economic issues in the event either party wishes at any time to bring an action to dissolve the marriage; and . . .

"[B]oth parties have discussed the terms and conditions, the implications and monetary considerations involved between themselves, and they desire to set forth their agreement in writing, without any force, coercion, intimidation or promise other than those convenants [sic] expressed herein, and they do fully and voluntarily enter into this agreement; and . . .

"[I]t is the desire of the parties to settle as between themselves their respective or mutual liabilities with regard to property rights and various claims by and between themselves and/or third parties . . . ." Postnuptial agreement, at 2-3.

Upon close reading of the language, we find that the agreement illustrated a clear desire on the part of both parties to determine and settle their respective property rights finally and for all time. The parties clearly intended to be bound by the agreement, despite the potential for a subsequent reconciliation. It is therefore our conclusion that the agreement between the parties is a postnuptial agreement.

Our determination that the document at issue is a postnuptial agreement is significant because, under Pennsylvania law, postnuptial agreements are contracts. *Laudig v. Laudig,* 425 Pa. Super. 228, 232, 624 A.2d 651, 653 (1993). As such, postnuptial agreements should be evaluated in accordance with contract principles and under the same criteria as are applicable to other types of contracts. *Commonwealth ex rel. Jones v. Jones,* 216 Pa. Super. 1, 3-4, 260 A.2d 809, 810 (1969). A postnuptial agreement may not be enforced by special relief under the Divorce Code, which provides for enforcement of

marital agreements in conjunction with divorce, if the agreement is not a complete property settlement agreement and the marriage is not dissolved. See *Laudig* at 232-33, 624 A.2d at 653.

Postnuptial agreements are presumed to be valid and binding. *In re Estate of Kester,* 486 Pa. 349, 353, 405 A.2d 1244, 1246 (1979); see also, *Hertzog v. Hertzog,* 25 D.&C.4th. 214, 216 (1995). The standard for enforceability is remarkably straightforward: "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon,* 417 Pa. Super. 592, 599, 612 A.2d 1360, 1363 (1992). Valid consideration for postnuptial agreements is satisfied by mutual promises to relinquish all interest in each other's property. *Ratony Estate,* 443 Pa. 454, 459, 277 A.2d 791, 794 (1971). A party seeking to invalidate the agreement has the burden of proof and must present evidence that is clear and convincing. *In re Estate of Kester,* 486 Pa. 349, 353, 405 A.2d 1244, 1246 (1979).

This agreement was entered into freely by both parties. Husband and Wife each agreed to abide by the terms thereof and, in doing so, agreed to relinquish all interest in each other's property. Moreover, there is no evidence of fraud, misrepresentation, or duress in the creation of the agreement. Therefore, we need only examine the terms of the writing itself to determine their meaning. *Creeks v. Creeks,* 422 Pa. Super. 432, 435, 619 A.2d 754, 756 (1993). We find that the language of the agreement is clear and unambiguous. As such, in interpreting the language, our paramount goal is to ascertain and give effect to the intent of the contracting parties. *Lyons v.*

*Lyons,* 401 Pa. Super. 271, 277, 585 A.2d 42, 45 (1991). In other words, because the contractual terms are clear and unambiguous, they must be given effect without reference to matters outside of the contract. *Purdy v. Purdy,* 715 A.2d 473, 475 (Pa. Super 1998). We must therefore construe the contract as a whole and the parties' intentions must be ascertained from the entire instrument. See *id.* We may not re-write it or give it a construction that conflicts with the accepted plain meaning of the language used. *Creeks v. Creeks,* 422 Pa. Super. 432, 435, 619 A.2d 754, 756 (1993). A contract will be deemed unambiguous so long as reasonable persons could not differ as to the contract's interpretation. *Purdy* at 475. We find that the language of the agreement is clear and unambiguous. We will therefore enforce the plain meaning.

The parties to this matter entered into a postnuptial agreement on November 28, 1994, but continued to share the marital residence until August of 2000. The agreement of the parties anticipated a possible eventual separation and divorce, and therefore intended to resolve the economic and property distribution issues of the parties for all time. The agreement provided for, among other things, the disposition of the marital residence located at HC 62 Box 108L Sullivan Trail, Tobyhanna Township, Long Pond, Monroe County, Pennsylvania. Husband and Wife are joint owners of this real estate. Paragraph 13 of the agreement provides that upon the institution of a divorce action, the marital residence will be disposed of in accordance with the following procedure:

"(A) Husband agrees to remove his person and belongings, as divided by the parties [sic] mutual agree-

ment hereinbefore, from the marital residence and marital real property and Husband does hereby agree to give Wife and [sic] sole and exclusive possession of the martial [sic] residence and martial [sic] real property. Husband does hereby agree that he shall not interfere with Wife's sole and exclusive possession of the martial [sic] real property. Should Husband violate this provision in any manner Husband consents to the entry of an injunction to prohibit and prevent future violation of this provision.

"(B) Upon separation and/or institution of a divorce action Husband agrees to and does hereby set over, transfer and assign all of his right, title and interest to the above-referenced premises or any subsequent martial [sic] residence and martial [sic] real property to Wife, subject to any existing mortgage lien or encumbrance thereon, which shall be and is expressly assumed by Wife. It is specifically understood and agreed that Wife does not hereby assume any other liens or encumbrances, whether created by Husband alone or resulting from any actions of Husband and Wife. Husband agrees to save harmless Wife and indemnify her with respect to and from any and all liability and/or claims and/or damages that she may sustain or become liable or answerable for or shall pay upon, any liens or encumbrances upon said premises resulting from any actions of Husband alone.

"(C) Husband shall transfer and agrees to and does hereby transfer and assign to Wife all of his right, title and interest in and to insurance policies of any nature whatsoever relating specifically and solely to said premises and contents therein. Husband shall, upon separa-

tion and/or institution of a divorce action, deliver forthwith with the said policies to Wife.

"(D) Husband shall, upon separation and/or institution of a divorce action, promptly execute and deliver to Wife a deed duly acknowledged in such form as counsel for Wife shall prepare, conveying all of his right, title in said premises to Wife, and shall execute all other documents and instruments required to effectuate the transfer of said premises to Wife." Postnuptial agreement at 14-16, paragraph 13.

Wife now seeks to enforce the postnuptial agreement, particularly the aforementioned language. She alleges that since the parties' physical separation, Husband has been abiding by the terms of the agreement in that he was paying the mortgage on the marital property in lieu of paying child and spousal support. This was in accordance with paragraph 16(A) of the agreement, which provides:

"In the event of a separation and/or institution of a divorce action Husband hereby agrees that he will pay each and every current monthly mortgage obligation, then owning [sic] upon the martial [sic] residence or martial [sic] real property including taxes and insurance, for support and the parties' minor children . . . ." Postnuptial agreement at 17-18.

Wife claims that she has not assumed the mortgage to the property, as required by the agreement, because she was told that because both she and Husband are listed on the deed to the property, both she and Husband must be on the mortgage as well. In other words, because Husband has not transferred the deed to Wife in accordance with paragraph 13(D), Wife was not obligated to assume the mortgage.

Conversely, Husband alleges that the postnuptial agreement should not be enforced because various changes have taken place since the agreement was signed, and thus were not specifically contemplated by the agreement. Husband maintains that the parties have not complied with paragraph 13(A) of the agreement, regarding the removal of all of Husband's personal belongings from the marital residence. He further asserts that Wife has failed to assume the mortgage in her name. Husband therefore proposes that Wife has waived the postnuptial agreement by failing to abide by, or compelling Husband to abide by, the terms thereof.

Because the agreement did not merge into the divorce decree, it stands as a separate contract subject to the law governing contracts. Where the terms of the contract are clear and unambiguous, we must enforce their plain meaning. Where the terms are not clear, we must adopt the construction that "gives effect to the parties' reasonable and probable intent, in view of the surrounding circumstances and purposes of the contract." *Kohn v. Kohn,* 242 Pa. Super. 435, 442, 364 A.2d 350, 353 (1976), citing *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963).

We find that during their period of reconciliation, the parties did not follow all of the terms or obligations of the agreement. Husband argues that the postnuptial agreement is waived because the parties failed to abide by the provisions thereof, namely Husband failed to remove all of his property from the marital home and Wife failed to make him do so. Although we agree with Husband's factual assertion, we disagree with the legal conclusion he

draws from it. Husband's failure to remove his personal belongings from the marital home, while not in keeping with the provisions of the agreement, does not constitute waiver of the agreement. The agreement could not be modified or abandoned absent requisite formality. See *Hertzog v. Hertzog,* 25 D.&C.4th 214, 217 (1995). Here, Husband never attempted to revise or invalidate the agreement. We therefore find that his waiver argument has no merit.

During the course of their reconciliation, Husband and Wife executed mortgages secured by their marital residence. In doing so, the parties jointly and severally obligated themselves to such loans. Until now, Wife never tried to assume the mortgages entirely nor did she demand that the deed be transferred into her name. Likewise, Husband never attempted to stop paying the mortgage nor did he offer to transfer the deed to Wife. Under the agreement, Husband was to "upon separation and/or institution of a divorce action, promptly execute and deliver to Wife a deed." Postnuptial agreement at 16, paragraph 13(D). The agreement's provisions pertaining to this obligation are clear and unambiguous. The parties clearly intended for said conveyance to occur. Husband knew from the time of the agreement's formation that it was his obligation to execute a deed for the premises to Wife, but willfully failed to do so. When the parties re-mortgaged their home twice, Husband signed his name to both mortgages. We will not allow him to hide behind a changed circumstances argument now.

Postnuptial agreements are contracts and are presumed to be valid. The burden was therefore on Husband to

prove that the agreement is not valid. *Id.* at 216, citing *Wolfe v. Wolfe,* 341 Pa. Super. 313, 317, 491 A.2d 281, 283 (1985). Upon careful review of the terms of the agreement, in view of the purpose thereof and in light of the surrounding circumstances, we find that Husband failed to meet his burden.

Husband further argues that Wife's motion for enforcement of the postnuptial agreement is barred by the statute of limitations and/or the doctrine of laches. We disagree. The discovery rule prevents the statute of limitations from commencing until the plaintiffs know or reasonably should know: (1) that they have been injured, and (2) that the injury has been caused by another party's conduct. *Haggart v. Cho,* 703 A.2d 522, 526 (Pa. Super. 1997). As is the case with all contracts, the statute of limitations does not begin to run until the rights and obligations of the parties to the contract are realized. In this case, the relevant time would be August of 2000, the date of separation. Wife filed a complaint in divorce on November 9, 2001. She filed to enter a decree in divorce and incorporate the agreement on February 13, 2004. This is well within the four-year statute of limitations for contracts. However, we need not even scrutinize the relevant time frame because, in the case of continuing contracts, such as postnuptial agreements, where the duties of the parties are ongoing, the statute of limitations generally does not run. *Dean v. Township of Bensalem,* 26 D.&C.3d 154, 161 (1983). We therefore conclude that because the agreement is governed by contract law and the obligations of the parties under the agreement are continuing, the statute of limitations is not an applicable defense for Husband.

Husband further alleges that Wife is barred from recovering the relief she requested by the doctrine of laches. Laches is the failure to assert a right for an unreasonable and unexplained length of time. See *Patten v. Vose,* 404 Pa. Super. 426, 429, 590 A.2d 1307, 1309 (1991). It is based on "some change in the condition or relation of the parties which occurs during [a] period [that] the complainant unreasonably failed to act." *Id.* To demonstrate a successful claim based on the doctrine of laches, the party asserting the doctrine must show not only a passage of time, but also a resulting prejudice to the party asserting the doctrine. *Id.* It is important to be mindful of the fact that laches will not be imputed by the mere passage of time, but requires an evaluation of all circumstances of a particular case. *Lindenfelser v. Lindenfelser,* 383 Pa. 424, 426, 119 A.2d 87, 88 (1956), citing *Schireson v. Shafer,* 354 Pa. 458, 463, 47 A.2d 665, 668 (1946).

The issue of laches is a factual issue to be decided according to the circumstances of each particular case. *Patten v. Vose,* 404 Pa. Super. 426, 429, 590 A.2d 1307, 1310. Husband asserts the defense of laches because Husband and Wife have not been in compliance with paragraph 13(A) of the agreement, regarding the removal of Husband's belongings from the marital residence upon separation. We find that Husband has failed to demonstrate how he has been prejudiced by maintaining some of his belongings in the marital residence for the past four years.

Husband further asserts the defense of laches because Wife has not assumed the mortgages solely in her name.

Husband claims he is prejudiced by the fact that Wife allowed an inordinate amount of time to elapse between the parties' entry into the agreement, their eventual separation, and Wife's instant motion for enforcement. During that protracted period, Husband continued to pay the mortgages, taxes, and utilities for the marital property, with both the knowledge and consent of Wife. Husband therefore argues that he is greatly prejudiced by Wife's attempt to enforce the agreement because Husband paid the mortgage for the property since 1994, however he will not receive any reimbursement from Wife for the decade worth of payments made. Husband further proposes that Wife has come to court with unclean hands in that she is seeking our use of equitable powers to enforce the agreement despite her own noncompliance with the agreement. Specifically, section 13(A) of the agreement requires Wife to assume any existing mortgage lien or encumbrance upon the real property concurrently with Husband's transfer of his property right. Husband argues that despite this obligation, Wife never assumed any of the mortgages against the property.

We find that Husband has failed to prove the necessary elements to successfully assert the defense of laches. Wife informed the court that she did not assume the mortgages because she was operating under the belief that she was not allowed to do so while the deed was not in her name. Husband failed to transfer the deed to Wife as required by the agreement. We will not permit Husband to argue that the agreement cannot be enforced because Wife failed to act, when Wife's reason for failing to act is inextricably linked to Husband's failure to act. We find that Wife's delay in seeking enforcement of the

agreement, where Husband had not changed his position in anticipation that Wife's claims were waived, especially where the statute of limitations has no applicability, is not prejudicial. See *Hicks v. Saboe,* 521 Pa. 380, 386, 555 A.2d 1241, 1244 (1989); *Kay v. Kay,* 460 Pa. 680, 684, 334 A.2d 585, 587 (1975). It is therefore our determination that the doctrine of laches does not preclude us from granting the equitable relief of specific performance to Wife.

Moreover, not only has Husband failed to establish that there was any prejudice to him as a result of the delay in Wife's action, but he has also failed to properly plead the defense of laches. The doctrine of laches is a defense in equity. It therefore must be pled in a "new matter" or else it is deemed waived. Pa.R.C.P. 1030. Rule 1030(a) of the Pennsylvania Rules of Civil Procedure provides, in pertinent part:

"All affirmative defenses [except assumption of risk, comparative negligence, and contributory negligence, which need not be pleaded] including but not limited to the defense of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, *laches,* license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading 'new matter.' " Pa.R.C.P. 1030. (emphasis added)

Husband failed to raise the defense of laches in a new matter. He merely asserted it in his answer to the rule

returnable. As such, we find that defendant has waived this defense.

We therefore make the following determinations and conclusions: Husband and Wife entered into a valid post-nuptial agreement. Husband breached said agreement by willfully failing to transfer a deed for the premises located at HC 62 Box 108L Sullivan Trail, Tobyhanna Township, Long Pond, Monroe County, Pennsylvania to Wife. Wife's action is not barred by the statute of limitations, nor is it barred by the doctrine of laches. Based upon the particular facts of this case, we find that specific performance of the postnuptial agreement is justified.

In Pennsylvania, a property settlement survives the divorce decree and is not merged therein where the parties have clearly and unambiguously expressed their intent that the agreement survive the entry of the divorce decree. *D'Huy v. D'Huy,* 390 Pa. Super. 509, 517, 568 A.2d 1289, 1293 (1990). Therefore, if an agreement survives the divorce decree, we will enforce the property settlement agreement between a husband and wife in accordance with the same rules that are applied to contract interpretation. *Lyons v. Lyons,* 401 Pa. Super. 271, 277, 585 A.2d 42, 45 (1991).

This agreement clearly indicates that it does not merge into the divorce decree. Paragraph 19 of the agreement provides:

"In the event that a divorce action is instituted the parties hereto agree to have the herein agreement incorporated but not merged into any divorce order entered by any court of competent jurisdiction and the entry of any order deemed necessary by the court to secure the per-

formance of the terms and conditions of the herein agreement. It is further agreed by the parties that the herein agreement shall be incorporated, but shall not merge, into the aforesaid decree of divorce." Postnuptial agreement at 19, paragraph 19.

Given the express language of paragraph 19, that the agreement be incorporated but not merged into the divorce decree, this postnuptial agreement will survive our issuance of a divorce decree "as an independent contract [that] is not subject to modification and is enforceable by traditional contract remedies." *Wareham by Trout v. Wareham,* 716 A.2d 674, 676 (Pa. Super. 1998), citing *Nessa v. Nessa,* 399 Pa. Super. 59, 63, 581 A.2d 674, 676 (1990).

Finally, we must address Wife's motion for award of counsel fees. Wife is seeking the imposition of attorney's fees and costs incurred as a result of this action. The intent of the rule permitting the recovery of counsel fees is not to punish those who initiate actions that ultimately fail. *Santilo v. Robinson,* 383 Pa. Super. 604, 607, 557 A.2d 416, 417 (1989). Rather, the purpose of the rule is to sanction those who knowingly raise, in bad faith, frivolous claims that have no reasonable possibility of success, for the limited purpose of harassing, obstructing or delaying the opposing party. *Brenckle v. Arblaster,* 320 Pa. Super. 87, 94, 466 A.2d 1075, 1078 (1983).

The agreement at issue contains a covenant of cooperation, which provides:

"Each party shall at any time, and from time to time hereafter, excuse, acknowledge and deliver to the other party any and all instruments, documents and other items

or assurances which may be necessary or appropriate to carry out the provisions of this agreement and to effectuate its intent and purpose. The parties also expressly agree that they shall take no action to interfere with the efforts of the other party to carry out the provisions of this agreement and to effectuate its intent and purpose." Postnuptial agreement at 7, paragraph 4.

Furthermore, the agreement contains a provision regarding costs of enforcement, which states:

"In the event of the failure of either party to cooperate as set forth above, the costs and expenses of any litigation or other action of any nature to compel compliance herewith, including attorney's fees, shall be borne by the non-cooperating party." Postnuptial agreement at 7, paragraph 5.

A review of the record indicates that Wife and Husband genuinely believe in their positions and have proffered credible arguments to support their respective positions. We do not believe that either party has brought this action, or any other action, to cause annoyance or delay. We find no bad faith or wrongful scienter on the part of Husband. It is apparent that a significant period of time has elapsed and there have been a proliferation of changes since the parties initially entered into the agreement. We therefore find that Wife's claim for attorney's fees must be denied, in accordance with 23 Pa.C.S. §3502(e). Husband's noncompliance with the postnuptial agreement was in good faith. Because neither party was cooperating with the agreement, with articulated reasons therefore, we find that each party is responsible for his and her respective attorney's fees.

Accordingly, we enter the following order:

## ORDER

And now, October 25, 2004, upon consideration of plaintiff, Chong Suk Cha Jenkins' motion for entry of decree in divorce, motion for enforcement of the post-nuptial agreement, and motion for award of counsel fees, we enter the following order:

(1) Wife's motion for entry of divorce pursuant to section 3301(d) is granted. Allan Paul Jenkins (Husband) and Chong Suk Cha Jenkins (Wife) are divorced from the bonds of matrimony.

(2) The postnuptial agreement entered into by the parties on November 28, 1994 is incorporated but not merged into this decree.

(3) Wife's motion for enforcement of the postnuptial agreement is granted as follows:

(a) Husband is ordered to remove his personal property from the marital residence within 30 days of the date of this order.

(b) Husband is ordered to deliver a fully executed and notarized deed to Wife's attorney transferring the marital residence to Wife within 10 days of the date of this order.

(c) Wife is ordered to assume all mortgage payments on the marital residence upon receipt of the deed.

(4) Wife's motion for award of counsel fees is denied. Husband and Wife are responsible for their respective attorney's fees.